**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Emerald Investments, LLC | Case No. 14-13407 (MG) |
| Debtor. | |
| In re: | Chapter 11 |
| Ashley River Consulting, LLC | Case No. 14-13406 (MG) |
| Debtor. | |

**FIRST AMENDED JOINT PLAN OF LIQUIDATION FILED BY THE TRUSTEE,
KRITI RIPLEY, LLC AND ASHLEY RIVER PROPERTIES II, LLC**

Dated October 9, 2015

**EMMET, MARVIN & MARTIN, LLP**
Thomas A. Pitta, Esq.
120 Broadway, 32nd Floor
New York, New York 10271
(212) 238-3000 (Telephone)
(212) 238-3100 (Facsimile)

**COUNSEL FOR KRITI RIPLEY, LLC AND
ASHLEY RIVER PROPERTIES, LLC**

**GAZES LLC**
Ian J. Gazes, Esq.
151 Hudson Street
New York, NY 10013
(212) 765-9000 (Telephone)
(212) 765-9675 (Facsimile)

**COUNSEL FOR IAN J. GAZES, AS TRUSTEE FOR
EMERALD INVESTMENTS, LLC AND ASHLEY
RIVER CONSULTING, LLC**

# TABLE OF CONTENTS

**Page**

I. DEFINITIONS, INTERPRETATIONS AND EXHIBITS .......................................................1

    **1.1**       Scope of Definitions ..............................................1
    **1.2**       Rules of Interpretation ............................................8
    **1.3**       Exhibits .....................................................9

II. TREATMENT OF UNCLASSIFIED, UNIMPAIRED CLAIMS ...........................................9

    **2.1**       Administrative Claims ............................................9
    **2.2**       Statutory Fees.................................................9
    **2.3**       Professional Claim .............................................9
    **2.4**       Priority Claims ................................................9
    **2.5**       Deadline for Filing Administrative Claims.............................10

III. CLASSIFICATION AND TREATMENT OF CLAIMS .................................................10

    **3.1**       Classification and Treatment ......................................10
    **3.2**       Class 1— Kriti Claims ...........................................10
    **3.3**       Class 2—General Unsecured Claims.................................11
    **3.4**       Class 3—Interests .............................................11

IV. EXECUTORY CONTRACTS AND UNEXPIRED LEASES .........................................11

    **4.1**       Approval of Rejection; Rejection Damages Claims Bar Date..................11

V. MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN ..........................12

    **5.1**       Implementation of the Plan........................................12
    **5.2**       363 Sale....................................................12
    **5.3**       Marketing...................................................12
    **5.4**       Auction.....................................................12
    **5.5**       Dissolution of Debtors ..........................................13
    **5.6**       Abandonment of Florida Properties..................................13
    **5.7**       Cancellation of Instruments, Securities and Other Documentation..........13
    **5.8**       Objections to Claims............................................13
    **5.9**       Avoidance Actions .............................................13
    **5.10**     Validity of Corporate Actions......................................13

VI. DISTRIBUTIONS ........................................................................14

    **6.1**       Distributions by the Trustee.......................................14
    **6.2**       Delivery of Distributions in General..................................14
    **6.3**       Cash Payments ...............................................14
    **6.4**       Unclaimed Property/Failure to Negotiate Checks .......................14
    **6.5**       Full and Final Satisfaction ........................................15
    **6.6**       Compliance with Tax Requirements.................................15

VII. RELEASE OF LIENS ...................................................................................15

    **7.1**        Release of Liens ...................................................................15

VIII. EFFECT OF CONFIRMATION ................................................................15

    **8.1**        Jurisdiction of Bankruptcy Court.................................................15
    **8.2**        Binding Effect...............................................................................15
    **8.3**        Stay ..............................................................................................16
    **8.4**        Exculpation...................................................................................16
    **8.5**        Releases........................................................................................16
    **8.6**        Injunction. ....................................................................................17

IX. ACCEPTANCE OR REJECTION OF THIS PLAN ....................................18

    **9.1**        Persons Entitled to Vote...............................................................18

X. CONDITIONS TO THE EFFECTIVE DATE AND CONFIRMATION ...........18

    **10.1**      Conditions to Effective Date.......................................................18
    **10.2**      Notice of Effective Date ..............................................................19

XI. RETENTION OF JURISDICTION................................................................19

    **11.1**      Exclusive Jurisdiction of Bankruptcy Court ...............................19
    **11.2**      Failure of Bankruptcy Court to Exercise Jurisdiction.................20

XII. MISCELLANEOUS PROVISIONS .............................................................20

    **12.1**      Binding Effect of Plan .................................................................20
    **12.2**      Withdrawal of this Plan ...............................................................20
    **12.3**      Final Order ...................................................................................21
    **12.4**      Modification of this Plan..............................................................21
    **12.5**      Severability of Plan Provisions....................................................21
    **12.6**      Governing Law ............................................................................21
    **12.7**      Notices .........................................................................................22
    **12.8**      Filing of Additional Documents ..................................................22
    **12.9**      No Attorneys' Fees ......................................................................22
    **12.10**    Successors and Assigns................................................................22
    **12.11**    Exemption from Certain Transfer Taxes .....................................22
    **12.12**    Preservation of Rights of Setoff..................................................23
    **12.13**    Defenses with Respect to Unimpaired Claims............................23
    **12.14**    No Injunctive Relief.....................................................................23
    **12.15**    No Admissions .............................................................................23
    **12.16**    Satisfaction of Claims and Interests............................................23
    **12.17**    Authorizations.............................................................................23
    **12.18**    Transaction on Business Days .....................................................24
    **12.19**    Headings ......................................................................................24
    **12.20**    Entire Agreement ........................................................................24

## CHAPTER 11 PLAN OF LIQUIDATION

### INTRODUCTION

This Joint Chapter 11 Plan of Liquidation (the "**Plan**"), dated October 9, 2015, is proposed by (a) Ian Gazes, as Trustee for Emerald Investments, LLC ("**Emerald**") and Ashley River Consulting, LLC ("**ARC**" and, together with Emerald, the "**Debtors**"), (b) Kriti Ripley, LLC ("**Kriti**") and (c) Ashley River Properties, LLC ("**Ashley River II**") and, together with the Trustee, and Kriti, the "**Proponents**").

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THIS PLAN IN ITS ENTIRETY. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3018 AND IN THIS PLAN, THE PROPONENTS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THIS PLAN UNTIL ITS SUBSTANTIAL CONSUMMATION.**

### I. DEFINITIONS, INTERPRETATIONS AND EXHIBITS

**1.1**    Scope of Definitions

For purposes of this Plan, and to the extent not otherwise provided herein, the terms below shall have the respective meanings hereinafter set forth and designated with the initial letter of each word being capitalized and, unless otherwise indicated, the singular shall include the plural, the plural shall include the singular and capitalized terms shall refer to the terms as defined in this Article I.

*"2005 Arbitration Award"* means the award rendered on October 31, 2005, as modified on December 9, 2005, in the arbitration case *In the Matter of the Arbitration Between Kriti Ripley, LLC and Ashley River Properties II, LLC, Claimants and Emerald Investment, LLC and Stuart Longman, Respondents.*

*"2010 Arbitration Award"* means the award rendered on October 28, 2010 in the arbitration case *In the Matter of the Arbitration Between Emerald Investment, LLC and Kriti Ripley, LLC.*

*"2008 New York Judgment"* means the judgment entered by the New York State Supreme Court on April 2, 2008 confirming the 2005 Arbitration Award.

*"2011 New York Judgment"* means the judgment entered by the New York State Supreme Court on December 16, 2011 confirming the 2010 Arbitration Award.

*"363 Sale"* means the sale, if applicable, by the Trustee of the Marina Property in accordance with section 5.2 hereof.

*"Administrative Claim"* means a Claim for any cost or expense of administration (including Professional Claims) of the Chapter 11 Case asserted or arising under

sections 503(b), 507(a)(1), or 507(b) of the Bankruptcy Code, including any taxes accruing and payable by the Debtors arising by reason of any sale contemplated hereunder and post-petition.

*"Administrative Claims Bar Date"* means the date that is 30 days following the Effective Date, which shall be the last date to request payment of Administrative Claims (other than (a) Claims of Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

*"Administrative Claims Fund"* means funds in an amount sufficient to satisfy the Administrative Claims and the United States Trustee Fees as set forth on the Administrative Claims Schedule, which funds shall be paid to the Trustee upon the Effective Date (a) if the 363 Sale shall occur, out of the Estate 363 Proceeds and (b) if the 363 Sale shall not occur, by Kriti. In the even the Estate 363 Proceeds are insufficient to pay the Administrative claim Kriti shall pay the deficiency. By way of example only, if the Estate 363 Proceeds are $10,000 above the Strike Price the sale shall occur and Kriti agrees to pay any deficiency owed for the Allowed Administrative Claims.

*"Administrative Claims Schedule"* means a list, in form, substance and amount authorized by the Court, of all (i) Administrative Claims as of the Effective Date, which shall include (a) the name and address of all Claimants, (b) the amounts asserted as Administrative Claims and (b) the Allowed amount of the Administrative Claims, and (ii) Administrative Claims that are anticipated to be asserted after the Effective Date, including (a) the name and address of the Claimants, and (b) the anticipated amounts to be asserted as Administrative Claims.

*"Allowed"* means any Claim or portion thereof against the Debtors, (a) proof of which was Filed within the applicable period of limitation fixed by the Bankruptcy Court in accordance with Bankruptcy Rule 3003(c) as to which (i) no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order or (ii) any objection has been settled, waived, withdrawn or denied by a Final Order, or (iii) if an objection has been interposed, to the extent such Claim has been allowed by a Final Order, (b) which, if no proof of claim was so Filed, has been listed by the Debtors in their Schedules as liquidated in an amount and not disputed or contingent as to which (i) no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order or (ii) any objection has been settled, waived, withdrawn or denied by a Final Order, or (iii) if an objection has been interposed, to the extent such Claim has been allowed by a Final Order, (c) which Claim arises from the recovery of property under sections 550 or 553 of the Bankruptcy Code and is allowed in accordance with section 502(h) of the Bankruptcy Code, (d) which Claim is expressly allowed under this Plan, or (e) which Claim is allowed by a Final Order; provided, however, that the term "Allowed" shall not include, unless otherwise specified in this Plan, interest on any Claim from and after the Petition Date.

*"Allowed Administrative Claim"* means all or that portion of any Administrative Claim that is or has become an Allowed Claim.

2

"**Assets**" means all legal or equitable interests of the Debtors in any and all real or personal property of any nature, including any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Claims, Causes of Action and any other general intangibles, and the proceeds, product, offspring, rents or profits thereof.

"**Ashley River II**" means Ashley River Properties II, LLC.

"**Ashley River II Operating Agreement**" means the Operating Agreement of Ashley River Properties II, LLC dated as of December 29, 2003, as amended and modified.

"**Avoidance Actions**" means any and all causes of action that a trustee, debtor-in-possession, the estate or other legal representative or appropriate party-in-interest, including the Trustee, may assert, including those causes of action under sections 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, including the Debtors' rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity in connection herewith (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted.

"**Bankruptcy Code**" means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect on the Petition Date, together with all amendments and modifications thereto to the extent applicable to the Chapter 11 Cases.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York, which has jurisdiction over the Chapter 11 Cases, or such other court exercising bankruptcy jurisdiction.

"**Bankruptcy Rules**" means (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of title 28 of the United States Code, (b) the Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of title 28 of the United States Code, (c) the Local Bankruptcy Rules of the Bankruptcy Court, and (d) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto to the extent applicable to this Chapter 11 Case or proceedings therein, as the case may be.

"**Bar Date**" shall mean collectively the Administrative Claims Bar Date, the General Bar Date and the dates fixed in the Confirmation Order by which all proofs of Claim in these Chapter 11 Cases must be, or must have been filed, or be forever barred from asserting a Claim against the Debtors or their property and from sharing in Distributions hereunder.

"**Broker Commission**" means the commissions payable to the broker retained by the Trustee to market the Marina Property upon the consummation of the 363 Sale.

"**Business Day**" means any day other than a Saturday, Sunday or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

3

"***Case Closing Date***" shall mean the date the Chapter 11 Cases, or either of them, shall be closed in accordance with section 350 of the Bankruptcy Code.

"***Cash***" means money, currency and coins, negotiable checks, balances in bank accounts and other lawful currency of the United States of America and its equivalents.

"***Causes of Action***" means any and all actions, claims, rights, defenses, impleader claims, damages, executions, demands, cross claims, counterclaims, suits, causes of action, choses in action, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, accruing to the Debtors, including the Avoidance Actions.

"***Chapter 11 Cases***" means the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court on the Petition Date assigned as Case Nos. 14-13406 and 14-13407, pending in the Bankruptcy Court.

"***Charging Order***" means the *Order Resolving Rule to Show Cause Involving Application for Charging Order* issued by the South Carolina Court of Common Pleas for the Ninth Judicial Circuit on February 6, 2009 in Civil Action No. 2008-CP-10-2344.

"***Claim***" has the meaning assigned to such term in section 101(5) of the Bankruptcy Code.

"***Class***" means a group of Claims or Interests as classified in a particular class under this Plan pursuant to section 1122 of the Bankruptcy Code.

"***Confirmation***" means the entry of an order confirming this Plan in accordance with section 1129 of the Bankruptcy Code.

"***Confirmation Date***" means the date on which the Confirmation Order is entered on the docket maintained by the Clerk of the Bankruptcy Court.

"***Confirmation Hearing***" means the hearing held before the Bankruptcy Court to consider Confirmation of this Plan pursuant to section 1128 of the Bankruptcy Code, as it may be continued from time to time.

"***Confirmation Order***" means the order issued and entered confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

"***Disallowed***" means a Claim or any portion thereof that (a) has been disallowed by a Final Order including without limitation pursuant to the Confirmation Order, (b) has been listed on the Schedules as zero or as contingent, disputed or unliquidated and as to which Bar Date has been established but no proof of claim or equity interest has been timely Filed or deemed timely Filed pursuant to either the Bankruptcy Code or any Final Order or otherwise deemed timely Filed under applicable law, or (c) is not listed on the Schedules and as to which

4

the Bar Date has been set and no proof of claim or interest has been timely Filed or deemed timely Filed pursuant to either the Bankruptcy Code or any Final Order or otherwise deemed timely Filed under applicable law.

"***Distributions***" means any and all distributions to holders of Claims or Interests pursuant to this Plan.

"***Effective Date***" means the Business Day following the date upon which all conditions set forth in Section 10.1 shall have occurred or have been satisfied.

"***Emerald Membership Interests***" means the membership interests in Ashley River II owned by Emerald pursuant to the Ashley River II Operating Agreement, as modified by, *inter alia*, the 2008 New York Judgment and the 2011 New York Judgment.

"***Estates***" means the Debtors' bankruptcy estates created in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

"***Estate 363 Proceeds***" means the proceeds of the 363 Sale, if any, payable to Emerald on account of the Emerald Membership Interests pursuant to the Ashley River II Operating Agreement.

"***File***" or "***Filed***" means file or filed with the Clerk of the Bankruptcy Court in the Chapter 11 case.

"***Final Order***" means an order or judgment entered by the Bankruptcy Court, or another court of competent jurisdiction, in connection with the Chapter 11 Case, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or to seek certiorari, review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending or as to which any right to appeal or to seek certiorari, review or rehearing has been waived in writing in a manner satisfactory to the Proponents.

"***Florida Properties***" means the parcels of real property in Palatka, Florida owned by Emerald according to Amended Schedule A of the Emerald Schedules.

"***General Bar Date***" shall mean the date that is 30 days following the Effective Date, by which all proofs of Claim arising prior to the Petition Date in the Chapter 11 Case must have been filed, or be forever barred from asserting a Claim against the Debtors or their property and from sharing in distributions hereunder.

"***General Unsecured Claim***" shall mean any Claim that is not an Administrative Claim, Kriti Claim, Professional Claim or Priority Claim.

"***Impaired***" when used in this Plan with reference to a Claim or an Interest, has the meaning assigned to such term in section 1124 of the Bankruptcy Code.

"***Interest***" means (a) all rights arising from any equity (as the term is defined in section 101(16) of the Bankruptcy Code) of the Debtors, and (b) the legal, equitable, contractual or other rights of any person or entity to acquire or receive any of the foregoing or any right

5

thereto or interest therein, including, but not limited to, all issued, unissued, authorized or outstanding shares.

*"Kriti Claims"* means the Claims of Kriti and Ashley River II against Emerald arising out of the 2005 Arbitration Award, the 2008 New York Judgment, the Charging Order, and any and all other claims arising prior to the Petition Date that could be asserted against the Debtors by Kriti or Ashley River II.

*"Marina Property"* means the property in Charleston, South Carolina owned by Ashley River II.

*"Objection"* means any objection, application, motion, complaint or any other legal proceeding, including, with respect to the terms of this Plan, seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify or establish the priority, expunge, subordinate or estimate any Claim (including the resolution of any request for payment of any Administrative Claim) or Interest.

*"Person"* means an individual, corporation, partnership, limited liability company, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

*"Petition Date"* means December 15, 2014.

*"Plan"* means this Chapter 11 Plan of Liquidation as it may be amended or modified.

*"Post-Petition"* means a date on or after the Petition Date.

*"Pre-Petition"* means a date prior to the Petition Date.

*"Priority Claim"* means any Claim against the Debtors described in section 507(a) of the Bankruptcy Code to the extent such Claim has not already been paid during the Chapter 11 Case, other than an Administrative Claim.

*"Professional"* means a Person (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328 and/or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, and/or 331 the Bankruptcy Code or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

*"Professional Claim"* means a Claim of a Professional retained in the Chapter 11 Cases pursuant to sections 327 and/or 1103 of the Bankruptcy Code or otherwise, for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date and prior to and including the Effective Date.

6

"**Professional Fees**" means Claims by Professionals retained by the Trustee for compensation and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code.

"**Professional Fee Applications**" means applications by Professionals for payment of fees and reimbursement of expenses incurred prior to the Effective Date.

"**Property of the Estate**" means all property of the Debtors and the Estates of every type and nature pursuant to section 541 of the Bankruptcy Code.

"**Proponents**" means the Trustee, Kriti, and Ashley River II.

"**Qualified Bid**" shall have the meaning ascribed thereto in section 5.3 hereof.

"**Released Claims**" means collectively, (a) claims or causes of action that have been or could have been asserted by the Trustee or either or both of the Debtors against the Released Parties, and (b) claims against the Released Parties that otherwise arise from or relate to the Chapter 11 Cases, the 363 Sale, the Plan, or the negotiations and compromises relating to the 363 Sale, or set forth in the Plan, including, without limitation, any such claim, demand, right, liability, or cause of action for indemnification, contribution or any other basis in law or equity for damages, costs or fees incurred by the releasers herein arising directly or indirectly from or otherwise relating thereto, whether or not (i) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (ii) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code (or is otherwise resolved), or (iii) the holder of a Claim based upon such debt voted to accept the Plan; provided, however, that "Released Claims" is not intended to release, nor shall it have the effect of releasing, any party from (x) claims or Causes of Action on account of conduct occurring after the Effective Date or (y) the performance of its obligations in accordance with the 363 Sale, the Confirmation Order or the Plan.

"**Released Parties**" means collectively, (a) the Trustee in his fiduciary and individual capacity and Chapter 11 professionals (collectively known as the "Trustee"), (b) Kriti, and (c) Ashley River II, and each of their predecessors, successors and assigns (whether by operation of law or otherwise), affiliates, current and former members, equity holders, officers, directors, employees, managers, shareholders, financial advisors, attorneys, accountants, investment bankers, consultants, and agents, provided, however, that "Released Parties" is not intended to include, and shall not be deemed to include Stuart Longman, the Gayla Longman Family Irrevocable Trust u/t/d 1/2010, any pre-petition members, officers or directors of either of the Debtors, or any affiliate of Stuart Longman other than Ashley River II.

"**Releases**" means the releases set forth in section 8.5.

"**Schedules**" means the Debtors' Schedules of Assets and Liabilities and Statement of Financial Affairs, as amended from time to time, Filed by the Debtors with the Bankruptcy Court pursuant to Bankruptcy Rule 1007.

"**Strike Price**" means $18 million, not subject to deductions, offsets, or any other purchase price adjustments.

7

"***Trustee Commissions***" means any commissions payable to the Trustee pursuant to section 326(a) of the Bankruptcy Code. For the avoidance of doubt, the amount of any credit bid by Kriti or distribution of property other than cash to Kriti on account of the Kriti Claims shall not be included in the calculation of "moneys disbursed or turned over in the case by the Trustee". In the event the sale realizes sufficient funds to meet the Strike Price, the Trustee shall be entitled to commissions on the gross sale proceeds.

"***Unclaimed Property***" means any distribution of Cash or any other property made to the holder of an Allowed Claim pursuant to this Plan that (a) is returned to the Trustee as undeliverable and no appropriate forwarding address is received within the later of (i) 90 days after the Effective Date and (ii) 90 days after such distribution is made to such holder or (b) in the case of a distribution made in the form of a check, is not negotiated within 90 days and no request for reissuance is made. Unclaimed Property shall be distributed in accordance with the terms of the Plan.

"***Unimpaired***" means any Claim that is not Impaired.

"***United States Trustee***" means the United States Trustee appointed under section 581(a)(3) of title 28 of the United States Code to serve in the Southern District of New York.

"***United States Trustee Fees***" means the fees payable by the Trustee pursuant to 28 U.S.C. 1930 (a)(b).

"***Voting Deadline***" means July 29, 2015 at 5:00 p.m.

**1.2**    Rules of Interpretation

All references herein to "Plan" shall be construed, where applicable, to include references to this document and all its exhibits, appendices, schedules and annexes, if any (and any amendments thereto made in accordance with the Bankruptcy Code and the Bankruptcy Rules). Whenever from the context it appears appropriate, pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular paragraph, subparagraph, or clause contained in this Plan. The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included. The captions, headings, and table of contents in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Any term used in this Plan that is not defined in this Plan, either in Article I. hereof or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules (with the Bankruptcy Code controlling in the case of a conflict or ambiguity). Without limiting the preceding sentence, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to this Plan, unless superseded herein. In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

Unless the context indicates otherwise, all references to "Article" shall refer to the Articles under this Plan.

### 1.3    Exhibits

All Exhibits to this Plan are incorporated into and are a part of this Plan as if set forth in full herein, regardless of when Filed.

## II.   TREATMENT OF UNCLASSIFIED, UNIMPAIRED CLAIMS

### 2.1    Administrative Claims

Subject to the allowance procedures and deadlines provided herein, on the Effective Date or as soon thereafter as is practicable, the holder of an Allowed Administrative Claim shall receive from the Administrative Claims Fund on account of such Allowed Administrative Claim and in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of such Allowed Administrative Claim or (b) such other treatment as to which the Trustee and the holder of such Allowed Administrative Claim have agreed upon in writing. In addition there shall be established from the Estate 363 Sale Proceeds, if any, a fund for the anticipated post Effective Date Administrative Claim(s).

### 2.2    Statutory Fees

Notwithstanding any other provision of this Plan to the contrary, the Trustee shall pay the the United States Trustee Fees within ten days after the Case Closing Date and simultaneously provide to the United States Trustee an appropriate affidavit indicating the cash disbursements for the period ending on the Case Closing Date.

### 2.3    Professional Claim

No later than the date that is 45 days after the Effective Date, each Professional shall File with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Effective Date, subject to the limitations set forth below.  The holder of an Allowed Professional Claim shall receive on account of such Allowed Professional Claim and in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Professional Claim, (a) Cash equal to the unpaid portion of such Allowed Professional Claim or (b) such other treatment as to which the Trustee and the holder of such Allowed Professional Claim have agreed upon in writing.

### 2.4    Priority Claims

Each holder of an Allowed Priority Claim against the Debtors shall receive from the Administrative Claims Fund the amount of such holder's Allowed Priority Claim in Cash as soon as practicable after the Effective Date in full.  The Proponents do not believe any such claims exist (as none were included on the Schedules or have been Filed to date).

**2.5**    Deadline for Filing Administrative Claims

Administrative Claims, other than Claims of Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code, must be Filed no later than the Administrative Claims Bar Date. Objections to any such Administrative Claims must be Filed and served on the claimant on or before the first Business Day that is 45 days after the Effective Date or such other extended date granted by the Bankruptcy Court upon request by the Debtors or the Trustee or otherwise agreed to by the relevant claimant.   The Debtors (pre-Effective Date) or the Trustee (post-Effective Date) shall use reasonable efforts to promptly and diligently pursue resolution of any and all disputed Administrative Claims.

Holders of Administrative Claims that are required to File a request for payment of such Claims and that do not File such requests on or before the Administrative Claims Bar Date, shall be forever barred from asserting such Claims against the Trustee, the Debtors, Kriti, Ashley River II, the Estate, or any of their respective Assets.

## III.  CLASSIFICATION AND TREATMENT OF CLAIMS

**3.1**    Classification and Treatment

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of the classes of Claims and Interests in the Debtors.  A Claim or Interest is placed in a particular Class only to the extent such Claim or Interest is an Allowed Claim or Interest in that Class and such Claim or Interest has not been paid, released, or otherwise settled or paid prior to the Effective Date.  Any claims not set forth in Article III are unclassified, and therefore, are not included in the classes below.

|         | Class                   | Status   | Voting Rights                 |
|---------|-------------------------|----------|-------------------------------|
| Class 1 | Kriti Claims            | Impaired | Proponent – Deemed to Accept  |
| Class 2 | General Unsecured Claims | Impaired | Entitled to Vote              |
| Class 3 | Interests               | Impaired | Entitled to Vote              |

**3.2**    Class 1— Kriti Claims

(a)    *Classification*: Class 1 consists of the Allowed Kriti Claims.  The Kriti Claims will be treated as Allowed Claims in the amount of $1,687,023.24 as of the Petition Date.

(b)    Treatment:

(i)    If the 363 Sale shall occur, Kriti shall receive all Estate 363 Proceeds after funding the Administrative Claims Fund up to the full Allowed amount of the

Kriti Secured Claim, including interest accruing Pre-Petition and Post-Petition, in full and final satisfaction of the Allowed Kriti Claims.

(ii)    If the 363 Sale shall not occur, Kriti shall receive the Emerald Membership Interests in full and final satisfaction of the Allowed Kriti Claims.

(c)    *Voting*: Class 1 is Impaired. The holders of Class 1 Claims are a Proponent and are deemed to accept this Plan.

**3.3**    Class 2—General Unsecured Claims

(a)    *Classification*: Class 2 consists of the Allowed General Unsecured Claims.

(b)    *Treatment*:

(i)    If the 363 Sale shall occur, each holder of an Allowed Class 2 Claim shall receive a *pro rata* share of the Estate 363 Proceeds, if any, remaining after the satisfaction of the Kriti Claims, after payment of all costs of post-confirmation administration that exceed the Administrative Claims Fund;

(ii)    If the 363 sale shall not occur, holders of Class 2 Claims will receive no distribution under the Plan.

(c)    *Voting*: Class 2 is Impaired. The holders of Class 2 Claims are entitled to vote to accept or reject this Plan.

**3.4**    Class 3—Interests

(a)    *Classification*: Class 3 consists of all Interests.

(b)    *Treatment*:

(i)    If the 363 Sale shall occur, each holder of an Interest shall receive a *pro rata* share of the Estate 363 Proceeds, if any, remaining after the distributions are made to holders of Allowed Claims in Class 1 and 2.

(ii)    If the 363 Sale shall not occur, all Interests shall be cancelled and extinguished and holders of Class 4 Interests shall receive no distribution under the Plan.

(c)    *Voting:* Class 3 is Impaired.  The holders of Class 3 Interests are entitled to vote to accept or reject this Plan.

## IV.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**4.1**    Approval of Rejection; Rejection Damages Claims Bar Date

Upon the occurrence of the Effective Date, the Confirmation Order shall constitute an Order of the Bankruptcy Court approving rejections of all executory contracts and unexpired

leases not previously assumed or rejected pursuant to section 365 of the Bankruptcy Code as of the Effective Date.  Any Claim for damages arising from any such rejection must be Filed within 30 days after the Debtor's mailing of Notice of the entry of the Confirmation Order or such Claim shall be forever barred, shall not be enforceable against the Debtors, the Estates, the Trustee, or any of their respective properties and shall receive no distribution under this Plan or otherwise on account of such Claim.  Kriti and Ashley River II shall not have any liability for claims arising from rejection of any executory contracts.

## V.  MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

### 5.1  Implementation of the Plan

The Plan will be implemented by the Proponents in a manner consistent with the terms and conditions set forth in the Plan and the Confirmation Order.

### 5.2  363 Sale

In connection with the Plan, Kriti and Ashley River II have authorized the Trustee to market and, to the extent a buyer pays in excess of the Strike Price, sell the Marina Property. In the event the Trustee sells the Marina Property, the Trustee shall turn the proceeds of the 363 Sale over to Ashley River II after satisfaction of the Broker Commission and funding of the Administrative Claims(s) Fund, and Ashley River II shall distribute such proceeds (a) first, in satisfaction of any and all debt obligations owed by Ashley River II[1] and (b) second, in accordance with the Ashley River II Operating Agreement. Ashley River II shall provide an accounting to the Trustee with respect to such distributions.

### 5.3    Marketing

The Trustee has retained Colliers, Inc. to continue to market the Marina Property. Parties interested in acquiring the Marina Property must submit, at least seven (7) days prior to the Confirmation Hearing: (a) an executed, binding purchase and sale agreement for the Marina Property, acceptable to the Trustee, Kriti and Ashley River II, on an as-is, where-is basis, not subject to contingencies for financing, corporate or shareholder approval, or due diligence, with a cash purchase price of not less than the Strike Price, and (b) a cash deposit of not less than 10% of the purchase price under such purchase and sale agreement (a "**Qualified Bid**").

### 5.4    Auction

In the event the Trustee receives more than one Qualified Bid, the Trustee will conduct an auction (the "**Auction**") of the Marina Property one business day prior to the scheduled Confirmation Hearing. At the conclusion of the Auction, the Trustee, in consultation with Kriti and Ashley River II, shall select a successful bidder, to whom the Marina Property shall be sold in accordance with this Plan. The Trustee may also select a backup bidder in the event the

---

[1]    The Proponents have reached agreement upon the amount of the debt obligations owed by Ashley River II as of December 31, 2014.  Those obligations are agreed to have been $14,624,251.34.

successful bidder fails to close, and the Trustee may hold the deposits submitted by the successful bidder and the backup bidder until the closing of the 363 Sale.

     **5.5**    Dissolution of Debtors

ARC shall be deemed dissolved upon the Effective Date with no distributions to holders Claims against or Interests in ARC. If the 363 Sale shall not occur, Emerald shall be deemed dissolved immediately following the distribution of the Emerald Membership Interests and the satisfaction of Allowed Administrative Claims.  In the event the 363 Sale shall occur, Emerald shall be deemed dissolved automatically one day following the distribution by the Trustee of all Estate 363 Proceeds.

     **5.6**    Abandonment of Florida Properties

As of the Effective Date, the Trustee shall abandon the Florida Properties.

     **5.7**    Cancellation of Instruments, Securities and Other Documentation

Except to the extent otherwise provided under this Plan or the Confirmation Order, upon the Effective Date, all Pre-Petition agreements (other than assumed contracts and third party guaranties and indemnities of a Debtor's obligations), credit agreements, Pre-Petition loan documents and Post-Petition loan documents to which either or both Debtors is a party, and all lien claims and other evidence of liens against the Debtors, shall be deemed to be cancelled and of no further force and effect, without any further action on the part of the Debtors or the Trustee.  The holders of or parties to such cancelled instruments, agreements, securities and other documentation will have no remaining rights arising from or relating to such documents or the cancellation thereof, except the rights provided pursuant to this Plan and the Confirmation Order and any rights that, by the terms of the applicable agreement, survive the termination of such agreement.

     **5.8**    Objections to Claims

All proofs of Claim Filed after the applicable Bar Date are disallowed in their entirety except to the extent they amend or modify a timely Filed Proof of Claim.  As of the Effective Date, only the Trustee shall be authorized or entitled to object to the allowance of any Claim Filed in connection with the Chapter 11 Cases.  Any such objection shall be Filed not later than the later of (a) 90 days after the Effective Date and (b) 60 days after the Filing of such Claim.

     **5.9**    Avoidance Actions

On the Effective Date, any and all Avoidance Actions shall be waived and released by the Debtors and the Trustee.

     **5.10**    Validity of Corporate Actions

Entry of the Confirmation Order by the Bankruptcy Court shall constitute due authorization (a) required for the full validity, enforceability and effectiveness of the Plan and all

transactions provided for in the Plan, notwithstanding any provisions of law which would otherwise require the approval of such transactions by the Trustee, the board of directors, shareholders or other constituents of the Debtors, and (b) for the Trustee to take any and all actions and execute, deliver and file all agreements, certificates, notices and other documents necessary or appropriate to consummate the transactions provided for in this Plan.

# VI. <u>DISTRIBUTIONS</u>

**6.1**    Distributions by the Trustee

Subject to Article V, Distributions under this Plan shall be made by the Trustee.

**6.2**    Delivery of Distributions in General

Distributions by the Trustee shall be made: (a) at the addresses set forth in the proofs of Claim filed by such holders; (b) at the addresses set forth in any written notices of address change delivered to the Trustee after the date on which any related proof of Claim was filed, or after the date hereof if no proof of Claim was filed; or (c) at the addresses reflected in the Schedules relating to the applicable Allowed Claim if no proof of Claim has been filed and the Trustee has not received a written notice of a change of address.

**6.3**    De Minimis Distributions

No payment of Cash in an amount of less than $100 shall be made on account of any Allowed Claim.  Such undistributed amount will instead be distributed to the remaining holders of Allowed Claims in the same Class.

**6.4**    Cash Payments

Cash payments to be made pursuant to this Plan shall be made by checks drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Trustee.

**6.5**    Unclaimed Property/Failure to Negotiate Checks

Unclaimed Distributions, including Distributions made by checks which fail to be negotiated, shall be held for the beneficial holders of respective Allowed Claims entitled thereto for a period of 90 days after the respective Distribution Date.  Any Distribution remaining unclaimed or un-negotiated 90 days after the applicable Distribution Date shall be canceled (by a stop payment order or otherwise), the Claim(s) relating to such Distributions(s) shall be deemed forfeited and expunged, such Unclaimed Distribution shall be re-distributed to the remaining holders of Allowed Claims in the same Class, and the holder of such Claim shall receive no further Distributions under this Plan and will be forever barred from asserting the Claim against the Debtors, the Trustee, Kriti or Ashley River II.  Nothing contained in this Plan shall require the Trustee to attempt to locate any holder of an Allowed Claim other than by reviewing the proofs of Claim and records of the Debtors.

**6.6**     Full and Final Satisfaction

All payments and all Distributions under the Plan shall be free and clear of all liens, claims and encumbrances and in full and final satisfaction, release and settlement of the Debtors' obligations with respect to all Claims, except as otherwise provided in the Plan, provided however that the Plan shall not be deemed to release or satisfy any co-obligor of the Debtors, except as expressly provided herein.

**6.7**     Compliance with Tax Requirements

The Trustee shall be entitled, but shall have no obligation, to deduct any federal, state or local withholding taxes from any Distribution made as reasonably appropriate.  All Persons holding Allowed Claims shall be required to provide any information reasonably requested to effect the withholding of such taxes, including, without limitation, delivering to the Trustee a properly executed Form W-9 or equivalent, and the Trustee may withhold any Distribution absent the provision of such information or further Order of the Court.  The Trustee shall provide three notices to each claimant of its obligation to submit an IRS Form W-9 or equivalent to the Trustee.   If the Claimant does not provide a Form W-9 or equivalent to the Trustee within 60 days after the third notice is sent to the Claimant, then such Claimant's Claim(s) shall be deemed forfeited and expunged and the holder of such Claim(s) shall receive no further Distributions under this Plan.

## VII.  <u>RELEASE OF LIENS</u>

**7.1**     Release of Liens

Except as otherwise provided in this Plan or other agreement or document created in connection with this Plan, all liens, encumbrances and other security interests against Assets of the Estates shall be deemed fully and completely released and discharged and all of the Assets of the Estates shall be deemed free and clear of any such liens, claims and encumbrances on and after the Effective Date.

## VIII.  <u>EFFECT OF CONFIRMATION</u>

**8.1**     Jurisdiction of Bankruptcy Court

Until the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Debtors, their Assets and the Estates.   Thereafter, jurisdiction of the Bankruptcy Court over the Debtors, their Assets and the Estates shall be limited to the subject matters set forth in Article XI.

**8.2**     Binding Effect

Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against or Interest in the Debtors and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under this Plan and whether or not such holder has accepted this Plan.

**8.3**    Stay

Unless otherwise provided herein, all injunctions or stays provided for in the Chapter 11 Cases pursuant to section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until all distributions pursuant to the Plan have been made.

**8.4**    Exculpation

To the fullest extent permissible under the Bankruptcy Code, the Released Parties shall neither have nor incur, and are hereby released from, any Claim, obligation, cause of action or liability of any kind or nature to one another or to any holder of a Claim or an Interest, or any other party in interest, or any of its members, representatives, advisors, attorneys, financial advisors, investment bankers, agents, or affiliates, or any of its successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the pursuit of Confirmation of the Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under the Plan, except for claims which arise or relate to actions or omissions determined in a Final Order to have constituted willful misconduct or gross negligence at any time. In all respects the Released Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and shall be deemed released as provided herein.

**8.5**    Releases

On the Effective Date, for good and valuable consideration, and to the fullest extent permissible under applicable law, each Person that has held, currently holds, or may hold a Released Claim, shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally, and forever waive, release, acquit and discharge each and all of the Released Parties, from any and all Released Claims.

The treatment of Claims and Interests under the Plan shall be, and shall be deemed to be, in exchange for and in complete satisfaction and settlement of all Claims and any other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities of any nature whatsoever, and of all Interests, or other rights of a holder of an Interest, against the Debtors or any of their respective assets, property and estate, or interests of any nature whatsoever, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities, or Interests or other rights of an holder of an equity security or other ownership interest. Upon the Effective Date, all rights of any equity security holder in the Debtors and all Interests shall be deemed terminated and cancelled.

Except as provided otherwise in the Plan or Confirmation Order, all entities shall be precluded from asserting against the Released Parties any Released Claims, regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities, or Interests or other rights of a holder of an equity security or other ownership interest. In accordance with the foregoing, except as expressly provided in the Plan or

Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the release of all such Released Claims, pursuant to sections 523 and 1141 of the Bankruptcy Code, and such release shall void and extinguish any judgment obtained against the Debtors and its assets, property and estate at any time, to the extend such judgment is related to a Claim, debt or liability or terminated right of any holder of any Interest in the Debtors.

**8.6**     Injunction.

Except as otherwise expressly provided in the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims or any other debt or liability that is discharged or Interests or other right of equity interests that is terminated or cancelled pursuant to the Plan, or who have held, hold, or may hold Claims or other debt or liability that is released pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on such Claim or other debt or liability that is released or Interest that is released, terminated, cancelled, assumed or transferred pursuant to the Plan against the Debtors or the Trustee or any of their respective assets, property or estates, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree or order against any of the Released Parties or any of their respective assets, property, or estates on account of any Released Claim or other debt or liability that is released or Interest that is released, terminated, cancelled, assumed, or transferred pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets, property or estates on account of any Released Claim or other debt or liability that is released or Interest that is released, terminated, cancelled, assumed or transferred pursuant to the Plan, (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets, property or estate, with respect to any such Released Claim or other debt or liability that is released or Interest that is released, terminated, cancelled, assumed, or transferred pursuant to the Plan, and (e) proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan; provided however, that such injunction shall not preclude the United States of America, any state or any of their respective police or regulatory agencies from enforcing their police or regulatory powers; and, provided, further, that, except in connection with a properly Filed proof of Claim, the foregoing proviso does not permit the United States of America, any State or any of their respective police or regulatory agencies from obtaining any monetary recovery, including fines, restitution or forfeiture, from any of the Released Parties, including, without limitation, the Trustee, the Debtors, the Estates or any of their respective assets and property with respect to any such Released Claim or other debt or liability that is discharged or Interest or other right of equity interest that is released, terminated or cancelled pursuant to the Plan, including, without limitation, any monetary claim or penalty in furtherance of a police or regulatory power.  Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets, property, and estates.

Each of the injunction and release provisions provided in this Article is an integral part of the Plan and is essential to its implementation.  Each of the Released Parties shall have the right

to independently seek the enforcement of the discharge, injunction and release provisions set forth in this Article.

The Trustee, Kriti, Ashley River II, Kriti and Ashley River II's officers and directors and each of their respective Professionals shall not have or incur any liability to any Person for any act taken or omitted to be taken in connection with the Chapter 11 Cases, the formulation, preparation, dissemination, implementation, Confirmation, or approval of the Plan or any compromises or settlements contained therein, the Disclosure Statement, or any contract, instrument, release or other agreement or document provided for in the Plan; provided, however, that nothing in the Plan shall (1) be construed to release or exculpate any entity from fraud, gross negligence, willful misconduct, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts, or (ii) limit the liability of the professionals of the Trustee to its clients pursuant to DR 6-102 of the Code of Professional Responsibility.

## IX.  ACCEPTANCE OR REJECTION OF THIS PLAN

**9.1**    Persons Entitled to Vote

The Holders of Class 1 Claims are Proponents of the Plan and are deemed to accept the Plan. Votes from holders of Class 2 Claims and Class 3 Interests will be solicited.  In the event either Class 2 or Class3 reject the Plan, the Proponents will proceed with confirmation pursuant to section 1129(b) of the Bankruptcy Code with respect to such classes.

## X.  CONDITIONS TO THE EFFECTIVE DATE AND CONFIRMATION

**10.1**   Conditions to Effective Date

This Plan shall not become effective and the Effective Date shall not occur unless and until:

(a)    If a Qualified Bid is received, the 363 Sale shall have closed;

(b)    The Bankruptcy Court shall have entered the Confirmation Order, which becomes a Final Order, authorizing and directing the Proponents to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, indentures and other agreements or documents created, amended, supplemented, modified, or adopted in connection with this Plan; and

(c)    No stay of the Confirmation Order shall be in effect at the time the other conditions set forth in this Section 10.1 are satisfied, or, if permitted, waived.

The Plan Proponents may waive the requirement that the Confirmation Order is a Final Order.

**10.2**    Notice of Effective Date

On the Effective Date, or as soon thereafter as is practicable, the Trustee shall file with the Bankruptcy Court and serve on all creditors a "Notice of Effective Date," which notice shall constitute appropriate and adequate notice that this Plan has become effective.

## XI.    RETENTION OF JURISDICTION

**11.1**    Exclusive Jurisdiction of Bankruptcy Court

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain after the Effective Date exclusive jurisdiction of all matters arising out of, arising in or related to, the Chapter 11 Case to the fullest extent permitted by applicable law, including, without limitation, jurisdiction to:

(a)    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest (whether filed before or after the Effective Date and whether or not contingent, disputed or unliquidated), including the compromise, settlement and resolution of any request for payment of any Administrative Claim or Priority Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the resolution of any dispute as to the treatment necessary to reinstate a Claim pursuant to this Plan, and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any objection to such Claim or Interest (to the extent permitted under applicable law);

(b)    grant or deny any Professional Fee Applications;

(c)    determine and resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtors is a party or with respect to which the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims arising there from;

(d)    ensure that all payments due under this Plan and performance of the provisions of this Plan are accomplished as provided herein, and resolve any issues relating to distributions to holders of Allowed Claims pursuant to the provisions of this Plan;

(e)    determine and resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of this Plan (and all Exhibits to this Plan) or the Confirmation Order, including the indemnification and injunction provisions set forth in and contemplated by this Plan or the Confirmation Order, or any Person's rights arising under or obligations incurred in connection therewith;

(f)    modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code and Section 12.4, or modify the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with this Plan, or the Confirmation Order, or remedy any defect or omission, or reconcile any inconsistency in any Court order, this Plan, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with this Plan or the

19

Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code, this Plan;

(g)   issue injunctions, enter, implement and enforce orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of this Plan, or the Confirmation Order;

(h)   adjudicate any settlements pursuant to Bankruptcy Rule 9019, if required under this Plan and the Confirmation Order and all other matters contained herein;

(i)   enter any orders necessary to effectuate the Confirmation.

**11.2**   Failure of Bankruptcy Court to Exercise Jurisdiction

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Debtors' Estate, including with respect to the matters set forth in Section 11.1, this Article XI shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

## XII.  MISCELLANEOUS PROVISIONS

**12.1**   Binding Effect of Plan

The provisions of this Plan and Confirmation Order shall be binding upon and inure to the benefit of the Debtors, the Trustee, the Estate, the Released Parties, any holder of any Claim or Interest, including without limitation Released Claims and Released Third Party Causes of Action, treated herein or any Person named or referred to in this Plan, and each of their respective heirs, executors, administrators, representatives, predecessors, successors, assigns, agents, officers and directors, and, as to the binding effect, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by this Plan and Confirmation Order.

**12.2**   Withdrawal of this Plan

The Proponents reserve the right, at any time prior to the substantial consummation (as that term is defined in section 1101(2) of the Bankruptcy Code) of this Plan, to revoke or withdraw this Plan.  If this Plan is revoked or withdrawn or if the Confirmation Date does not occur, this Plan shall be null and void and have no force and effect.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims or interests by or against the Proponents or any other Person, constitute an admission of any fact or legal conclusion by the Debtors or any other Person or to prejudice in any manner the rights of the Debtors, the Trustee, Kriti, Ashley River II, or any Person in any further proceedings.  In the event that Kriti or Ashley River II determines to withdraw the Plan, it shall reimburse the Trustee for the approved Adminitraive Claim(s) incurred through the date of such withdrawal, unless the Trustee shall be in breach of his obligations under this Plan.

**12.3**    Final Order

Except as otherwise expressly provided in this Plan, any requirement in this Plan for a Final Order may be waived by the Proponents.  No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

**12.4**    Modification of this Plan

The Proponents may alter, amend, or modify this Plan under section 1127 of the Bankruptcy Code or as otherwise permitted at any time before the Confirmation Date. After the Confirmation Date and before the substantial consummation of this Plan, and in accordance with the provisions of section 1127(b) of the Bankruptcy Code and the Bankruptcy Rules, the Proponents and any party in interest may, so long as the treatment of holders of Claims under this Plan is not adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order and any other matters as may be necessary to carry out the purposes and effects of this Plan.  However, prior notice of such proceedings shall be served in accordance with Bankruptcy Rule 2002.

**12.5**    Severability of Plan Provisions

If prior to Confirmation any term or provision of this Plan that does not govern on appeal the treatment of Claims or Interests or the terms is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**12.6**    Governing Law

EXCEPT TO THE EXTENT THAT THE BANKRUPTCY CODE OR BANKRUPTCY RULES OR OTHER FEDERAL LAWS ARE APPLICABLE, AND SUBJECT TO THE PROVISIONS OF ANY OTHER AGREEMENT OR DOCUMENT ENTERED INTO IN CONNECTION WITH THIS PLAN THE CONSTRUCTION, IMPLEMENTATION AND ENFORCEMENT OF THIS PLAN AND ALL RIGHTS AND OBLIGATIONS ARISING UNDER THIS PLAN SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO CONFLICTS OF LAW PRINCIPLES WHICH WOULD APPLY THE LAW OF A JURISDICTION OTHER THAN THE STATE OF NEW YORK OR THE UNITED STATES OF AMERICA.

**12.7   Notices**

Any notice required or permitted to be provided under this Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

| | |
|---|---|
| Kriti or Ashley River II: | Thomas A. Pitta, Esq.<br>Emmet, Marvin & Martin, LLP<br>120 Broadway, 32nd Floor<br>New York, NY 10271 |
| To the Trustee: | Ian J. Gazes, Esq.<br>Gazes LLC<br>151 Hudson Street<br>New York, NY  10013 |
| To the United States Trustee: | Michael Driscoll, Esq.<br>Office of the United States Trustee<br>U.S. Federal Office Building<br>201 Varick Street, Suite 1006<br>New York, NY  10014 |

**12.8   Filing of Additional Documents**

On or before substantial consummation of this Plan, the Proponents shall issue, execute, deliver, and file with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of this Plan, including by making such supplemental disclosures or notices as the Proponents deems useful.

**12.9   No Attorneys' Fees**

No attorneys' fees will be paid by the Debtors, the Trustee, Kriti or Ashley River II on account of any Claim or Interest, except as expressly specified herein or allowed by a Final Order of the Bankruptcy Court.

**12.10   Successors and Assigns**

The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

**12.11   Exemption from Certain Transfer Taxes**

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any security or the making or delivery of any instrument of transfer under this Plan may not be taxed under any law imposing a stamp tax, use tax, sales tax or similar tax.  Any sale of any

22

Asset occurring before, after or upon the Effective Date shall be deemed to be in furtherance of this Plan.

**12.12**   Preservation of Rights of Setoff

The Trustee may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtors or the Trustee or the Estates may have against the holder of such Claims but neither the failure to do so nor the Allowance of any Claim hereunder shall constitute a waiver or release by the Trustee or the Estates of any such claim that they may have against such holder.

**12.13**   Defenses with Respect to Unimpaired Claims

Except as otherwise provided in this Plan, nothing shall affect the rights and legal and equitable defenses of the Trustee with respect to any Unimpaired Claim, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

**12.14**   No Injunctive Relief

No Claim or Interest shall under any circumstances be entitled to specific performance or other injunctive, equitable, or other prospective relief.

**12.15**   No Admissions

Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Proponents with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of any classification of any Claim or Interest.

**12.16**   Satisfaction of Claims and Interests

Upon confirmation of this Plan, the Trustee, the Debtors and the Estates shall be conclusively determined to have no liability to the holder of any Claim or Interest that is not Allowed, and only to the extent provided for in the Plan with respect to the holder of any Allowed Claim or Interest.  This provision shall not be construed as a release of any Claims any creditor may have against a third party on account of its Claim.

**12.17**   Authorizations

The Trustee is authorized, empowered and directed to execute such documents and take any and all other action as may be necessary or required in order to effectuate the terms of this Plan.

**12.18**  Transaction on Business Days

If the Effective Date or any other date on which a transaction or Distribution may occur hereunder shall fall on a day that is not a Business Day, the transaction or Distribution shall instead take place on the next Business Day.

**12.19**  Headings

The headings of the Articles, paragraphs and sections of this Plan are inserted for convenience only and shall not affect the interpretation hereof.  This Plan, including any exhibits and other attachments hereto, shall constitute the entire Plan, subject to amendment or modification solely as provided herein.  Article I of this Plan is and shall be regarded as an integral, substantive and operative part of the Plan.

**12.20**  Entire Agreement

This Plan sets forth the entire agreement and undertakings relating to the subject matter hereof and supersedes all prior discussions and documents.  The Proponents shall not be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the applicable parties in writing.

Submitted by:


**EMMET, MARVIN & MARTIN, LLP**            **GAZES LLC**


/s/ Thomas A. Pitta                                      /s/ Ian J. Gazes
Thomas A. Pitta, Esq.                                  Ian J. Gazes, Esq.
120 Broadway, 32nd Floor                          151 Hudson Street
New York, New York 10271                       New York, NY  10013
(212) 238-3000 (Telephone)                       (212) 765-9000 (Telephone)
(212) 238-3100 (Facsimile)                         (212) 765-9675 (Facsimile)


COUNSEL FOR KRITI RIPLEY, LLC AND          COUNSEL FOR IAN J. GAZES, AS TRUSTEE FOR
ASHLEY RIVER PROPERTIES II, LLC                EMERALD INVESTMENTS, LLC AND ASHLEY
                                                                      RIVER CONSULTING, LLC